UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO R. AZEVEDO,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | No.  2:19-cv-01073-KJN<br><br>ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 11, 12, 15) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying his application for Disability Insurance Benefits under Title II of the Social Security Act.[1]  In his Motion for Summary Judgment (ECF No. 12), plaintiff primarily argues that the Administrative Law Judge ("ALJ") erred in evaluating the medical opinion evidence and discounting plaintiff's subjective symptom testimony.  The Commissioner opposes and filed a Cross-Motion for Summary Judgment.  (ECF No. 15.)

////

////

////

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and the parties consented to the jurisdiction of the undersigned for all purposes.  (See ECF Nos. 6, 7, 17.)

1

After considering the parties' written briefing, the record, and the applicable law, for the reasons set forth below the court GRANTS the Commissioner's Motion, DENIES plaintiff's Motion, and AFFIRMS the Commissioner's decision.

## I. BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS[2]

Plaintiff applied for disability insurance benefits on October 27, 2014, initially alleging an onset date of June 1, 2013. (Administrative Transcript ("AT") 108, 119.) Plaintiff claimed the following medical conditions: chronic back pain, emphysema/shortness of breath, elbow pain, and memory loss due to brain injury. (AT 107.) Plaintiff's application was denied initially and again upon reconsideration. (AT 146-49, 156-60.) Aided by an attorney, plaintiff sought review of these denials with an ALJ. (AT 165-66, 223-26.) At a hearing on November 6, 2017, plaintiff testified about his conditions and the ALJ heard testimony from a vocational expert regarding plaintiff's ability to work. (AT 87-106.)

On April 25, 2018 the ALJ issued a decision determining that plaintiff was not disabled. (AT 64-78.) At step one, the ALJ found that plaintiff had not engaged in substantial gainful work

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

activity since the amended alleged onset date of September 21, 2015.  (AT 67.)  At step two, the ALJ found plaintiff had the following severe impairments:  "degenerative disc disease status-post thoracic spine fusion surgery and emphysema."  (AT 67.)  At step three, the ALJ determined that the severe impairments did not meet or medically equal a listed impairment.  (AT 70.)

Accordingly, the ALJ found plaintiff had the residual functional capacity ("RFC") to perform "medium work," with the following limitations:

> The claimant cannot crawl or climb ladders ropes or scaffolds. He can balance, stoop, kneel, crouch, and climb ramps or stairs no more than occasionally. The claimant cannot work around hazards such as moving dangerous machinery and unprotected heights. He cannot work around concentrated excessive smoke, fumes, odors, gases, dust, or other environmental irritants. The claimant can push or pull with his right dominant upper extremity no more than occasionally.

(AT 70 (cleaned up).)  In reaching this conclusion, the ALJ considered plaintiff's symptoms, medical records, and the opinions provided by examining and consulting medical professionals.  (AT 70-75.)  Relevant here, the ALJ found that the alleged severity and limiting effects of plaintiff's reported symptoms were "out of proportion to his typically unremarkable presentation during his treatment visits," and that "the evidence of record generally does not support the alleged loss of functioning."  (AT 71, 73.)  The ALJ decided to "[give] great weight" to the opinion of Dr. Sharma, an examining physician who opined that plaintiff could perform "a reduced range of medium work," whereas the other examining physician and two consulting physicians opined that plaintiff could only perform light work.  (See AT 74-75.)  Ultimately, the ALJ concluded at steps four and five that plaintiff could not perform his past work as a dairy farm worker and truck driver but that "there were jobs that existed in significant numbers in the national economy that [plaintiff] could have performed," such as a kitchen helper and hand packer.  (AT 76-77.)

On January 23, 2019 the Appeals Council denied plaintiff's appeal of the ALJ's decision.  (AT 15.)  Plaintiff then timely filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross-motions for summary judgement.  (ECF Nos. 1, 11, 15.)

## II. STANDARD OF REVIEW

The court reviews the Commissioner's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Id. The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, the court may not reverse the ALJ's decision on account of harmless error. Buck, 869 F.3d at 1048.

## III. ISSUES PRESENTED

Plaintiff alleges three errors: (A) the ALJ improperly evaluated the medical opinions provided by examining and non-examining physicians; (B) the ALJ erroneously discounted plaintiff's testimony regarding the severity and limiting effects of his symptoms; and (C) the ALJ improperly rejected lay witness evidence. (ECF No. 12 at 8-19.) Based on these alleged errors, plaintiff requests that the court award benefits, or, in the alternative, remand for further proceedings. (ECF No. 12.)

The Commissioner counters each of plaintiff's arguments, contending that substantial evidence supports the ALJ's evaluation of the medical opinion evidence and plaintiff's subjective symptom testimony. (See ECF No. 15 at 5-13.) Thus, the Commissioner maintains that the ALJ's opinion should be affirmed. (ECF No. 15.)

## IV. DISCUSSION

### A. The ALJ did not err in evaluating medical opinions.

Plaintiff argues that the ALJ erred in finding that plaintiff could perform "medium work" because the ALJ improperly rejected the opinions of three physicians who found that plaintiff could perform "light work." (ECF No. 12 at 12-18.) In doing so, plaintiff contends that the ALJ's evaluation of the medical opinions was not supported by substantial evidence. (Id.)

4

Further, plaintiff argues that the "ALJ failed to consider that this doctor's conclusion is inconsistent with other aspects of his [own] report." (ECF No. 12 at 12.)  Instead, plaintiff argues the ALJ should have determined that plaintiff is restricted to only light work.  Therefore, plaintiff argues that any error is not harmless because, pursuant to Medical-Vocational Rule 202.06, a light RFC would render plaintiff disabled based on his age, education, and work background.  (ECF No. 12 at 9, 13 (citing 20 C.F.R. Pt. 404. Subpt. P. App. 2, Rule 202.06).)

**Legal Standard**

The ALJ is responsible for resolving conflicts among physicians' opinions.  Carmikle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008).  The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians.  Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion.  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001).

In order to evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, a court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995).  A physician's opinion is not conclusive as to physical condition or disability, and "the ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 2011).  To reject the uncontradicted opinion of a treating or examining physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

Conversely, the contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate reasons that are supported by substantial evidence." Lester, 81 F.3d at 830.  An ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." Magallanes, 881 F.2d at 751.  "Specific, legitimate reasons for rejecting a physician's opinion

1 may include [] reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings." Sherry W. v. Saul, 2020 U.S. Dist. LEXIS 131673, *9 (D. Or. July 23, 2020) (citations omitted).  When medical evidence is subject to more than one rational interpretation, the ALJ's conclusion must be upheld.  Tommasetti, 533 F.3d at 1038.

**Analysis**[3]

The court finds that the ALJ properly evaluated the medical opinion evidence by resolving a conflict between the opinions of two examining physicians.  On January 8, 2015 plaintiff underwent his first consultative medical examination with Dr. Schwartz who opined that plaintiff could sit, stand, and walk up to six hours without use of an assistive device and lift and carry 20 pounds occasionally and 10 pounds frequently.  (AT 441-45.)  On September 17, 2015 plaintiff underwent a second consultative examination with Dr. Sharma who opined that plaintiff could sit, stand, and walk up to six hours with normal breaks, lift and carry 25 pounds frequently and 50 pounds occasionally, and bend and stoop only occasionally.  (AT 471-76.)  Both physicians reported the same diagnoses and general findings regarding plaintiff's physical condition and his symptom complaints.  (Compare AT 441-45, with 471-76.)  Two non-examining physicians, Drs.

---

[3] In addition to the reasons discussed herein, plaintiff argues that the ALJ failed to consider plaintiff's ability to perform work on a sustained basis—"the existence of normal findings on some occasions is insufficient as a matter of law 'to demonstrate[] that [a claimant] can perform' medium work activities on a sustained basis as assumed by the ALJ." (ECF No. 12 at 12 (citing cases).)  However, without citing to any evidence or medical records in support of this proposition, the court finds this argument to be without merit.  The only portion of the ALJ's decision that may be legally relevant is the ALJ's repeated notation that "full range of motion in [plaintiff's] spine *on some occasions* demonstrates that [plaintiff] can perform a reduced range of medium work." (AT 74 (emphasis added).)  The court finds that the ALJ's use of the phrase "on some occasions" refers to plaintiff's consistent presentation of reduced range of motion in his spine at a relatively limited number of medical examinations, rather than the sporadic nature of his symptoms.  Whether a plaintiff's symptoms vary in severity is relevant to determine whether a "[plaintiff] can hold a job for only a short period of time," and is therefore incapable of substantial gainful work activity.  Gatliff v. Comm'r of the SSA, 172 F.3d 690, 694 (9th Cir. 1999).  Here, plaintiff does not demonstrate any attempts to secure work which were later unsuccessful due to debilitating pain, that his pain is worse some days or weeks, or that his symptoms vary in severity.  Thus, this argument fails.

Greene and Chiang, opined that plaintiff could sit, stand, and walk for up to six hours and lift and carry 20 pounds occasionally and 10 pounds frequently. (AT 114-16, 128-29.) In essence, plaintiff argues that the ALJ should have adopted a "light" rather than "medium" RFC because three doctors' findings are consistent with a light RFC. However, it is well established that the RFC is not a medical opinion, but a legal decision reserved solely for the Commissioner. 20 C.F.R. § 404.1527(d)(2); see, e.g., Brocchini v. Berryhill, 2018 U.S. Dist. LEXIS 100128, *20 (E.D. Cal. June 14, 2018). Thus, the ALJ must resolve the conflicts between the physicians' opinions. See Carmickle, 533 F.3d at 1164.

In evaluating the medical opinions, the ALJ assigned partial weight to Dr. Schwartz's opinion and great weight to Dr. Sharma's opinion. Because these examining physicians' opinions were conflicting, the ALJ needed to provide "specific and legitimate reasons" for rejecting Dr. Schwartz's opinion. See Magallanes, 881 F.2d at 751. The ALJ outlined Dr. Schwartz's findings in significant detail. (See AT 71.) Then, in discounting Dr. Schwartz's opinion that plaintiff is limited to light work, the ALJ stated that his opinion "is inconsistent with his own mostly unremarkable objective physical status findings." (AT 74.) Inconsistencies between a physician's opinion and the physician's treatment notes and observations is sufficient to discount or reject the opinion. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (a physician's opinion being inconsistent with treatment notes is a "specific and legitimate" reason to reject the opinion); Timothy J. v. Comm'r of Soc. Sec., 2018 U.S. Dist. LEXIS 219283, at *13 (E.D. Wash. July 9, 2018) (finding that a doctor's restrictive work limitation was inconsistent with the doctor's substantially normal physical findings); Teleten v. Colvin, 2016 U.S. Dist. LEXIS 43985, at *5-6 (E.D. Cal. Mar. 31, 2016) ("An ALJ may reject a treating physician's opinion that is inconsistent with other medical evidence, including the physician's own treatment notes."). Accordingly, the ALJ provided a sufficiently specific and legitimate reason to discount Dr. Schwartz's opinion.

Further, the ALJ properly relied on the objective medical evidence to discount Dr. Schwartz's opinion of light work. The ALJ found Dr. Schwartz's opinion to be inconsistent with "evidence of [plaintiff] ambulating without assistance or difficulty, transferring from a chair to the exam table, negative straight leg raising tests, normal motor strength throughout, intact

1    sensation, normal reflexes, and full range of motion in his spine on some occasions." (AT 74-75
2    (citing numerous medical records).)  In so finding, the ALJ properly set out a detailed summary
3    of the medical evidence, stated his interpretation thereof, and made findings.  See Magallanes,
4    881 F.2d at 751.

5         Plaintiff criticizes Dr. Sharma's opinion heavily, claiming that it "[states] only bare bones
6    conclusions," and is "based only upon [Dr. Sharma's] physical examination and observations."
7    (ECF No. 12 at 16.)  However, the court finds both reports to be nearly identical, with Dr.
8    Sharma's actually being *more* detailed, especially with respect to plaintiff's back.  (Compare 441-
9    45 (Dr. Schwartz's report does not mention any other evidence), with 471-85 (Dr. Sharma
10   performed x-rays and prepared more detailed clinical findings than Dr. Schwartz).)  Both
11   physicians reported substantially normal or mild findings with Dr. Schwartz merely noting
12   "decreased range of motion cervical spine" and "upper back pain secondary to past trauma" (AT
13   444), while Dr. Sharma noted "tenderness to palpitation" and "pain on forward flexion." (AT
14   474.)  Thus, the ALJ properly discounted Dr. Schwartz's opinion and found the objective medical
15   evidence to be more consistent with Dr. Sharma's opinion that plaintiff can perform medium
16   work.

17        Plaintiff also argues that the ALJ erred in evaluating the non-examining consultative
18   physicians who opined that plaintiff could perform a range of light work.  (ECF No. 12 at 17.)
19   Examining physician's opinions are given more weight than the opinion of non-examining
20   physicians, especially when an examining physician's opinion is supported by clinical findings.
21   See Holohan, 246 F.3d at 1202; Lester, 81 F.3d at 831.  Here, the ALJ implicitly rejected the non-
22   examining physicians' opinions regarding plaintiff's ability to perform only light work, but the
23   ALJ adopted their findings regarding plaintiff's limited ability to use his right arm and restriction
24   from being exposed to environmental irritants.  (See AT 75.)  An ALJ "may reject the opinion of
25   a non-examining physician by reference to specific evidence in the medical record." Sousa v.
26   Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998).  In discounting the opinions of these non-
27   examining physicians, the ALJ referenced the same body of specific medical evidence regarding
28   plaintiff's generally unremarkable presentation used to discount Dr. Schwartz's opinion.  (AT 74-

8

75.) Accordingly, the ALJ's use of specific, objective clinical findings and examination reports to discount the opinions of these non-examining physicians is not error, and the ALJ properly discounted these physicians' opinions. See Sousa, 143 F.3d at 1244.

Similarly, plaintiff contends that Dr. Sharma's opinion of medium work is an "outlier opinion" because the three other physicians opined that plaintiff can only perform a range of light work. (ECF No. 16 at 2-3.) Plaintiff's reasoning contravenes the well settled rule that the ALJ is responsible for weighing medical opinion evidence, especially when there are conflicts, and a plaintiff's RFC determination is reserved solely for the Commissioner. See 20 C.F.R. § 404.1527(d)(2); Tommasetti, 533 F.3d at 1041-42 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); Magallanes, 881 F.2d at 753 (an ALJ need not agree with every aspect of a physician's report or opinion). In this case, the ALJ reasonably reconciled the opinions of two examining physicians regarding plaintiff's physical limitations. Further, the ALJ properly considered the opinions of non-examining sources, implementing their findings into his RFC calculation. Moreover, the ALJ's decision to adopt part of Dr. Sharma's opinion regarding plaintiff's physical limitations over the opinions of other physicians of record was supported by substantial evidence. Although the court is sympathetic to plaintiff's concerns, the ALJ's decision must be upheld where it is subject to more than one rational interpretation and supported by substantial evidence. See Tommasetti, 533 F.3d at 1038; Edlund, 253 F.3d at 1156.

**B. The ALJ did not err in discounting plaintiff's subjective symptom testimony.**

Plaintiff argues that the ALJ's reasons for discounting his subjective complaints are legally insufficient. (ECF No. 12 at 14-19.) Due to chronic back pain and shortness of breath, plaintiff claims that he cannot work because he has difficulty standing and sitting for prolonged periods of time, as well as difficulty walking, bending, climbing stairs, completing tasks, and performing household chores and other activities of daily living. (AT 315-33.) In evaluating plaintiff's subjective symptom testimony, the ALJ found that plaintiff satisfied the first part of the required two-step analysis—plaintiff has an impairment that could reasonably cause his alleged symptoms—but the ALJ discounted plaintiff's claims about the severity and limiting effects of those symptoms. (AT 70-75.) Prior to analyzing plaintiff's subjective complaints, the ALJ

9

outlined plaintiff's treatment history in significant detail. In doing so, the ALJ discussed plaintiff's relatively conservative and non-aggressive treatment history. (See AT 71-73.) The ALJ also discounted plaintiff's subjective complaints "because the evidence of record generally does not support the alleged loss of functioning." (AT 73.) Additionally, the ALJ discounted plaintiff's subjective complaints based on his ability to perform self-care and other activities of daily living. (AT 74.) Finally, the ALJ noted that "the record indicates that [plaintiff] has been a smoker for 35 years." (AT 74.) As discussed below, the court finds no material error in the ALJ's evaluation of plaintiff's subjective symptom testimony.

**Legal Standard**

A claimant's statements of subjective symptoms alone is insufficient grounds to establish disability. 20 C.F.R § 404.1529(a). If an ALJ was required to believe every allegation of pain or impairment, disability benefits would run afoul of the Social Security Act and its purpose. See Treichler v. Comm'r of SSA, 775 F.3d 1090, 1106 (9th Cir. 2014). In evaluating the extent to which an ALJ must credit the claimant's report of their symptoms, the Ninth Circuit has set forth the following two-step analysis:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)).

The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a claimant's testimony." Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)). Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony include: a finding of "conservative treatment," the effectiveness of or noncompliance with a prescribed regime of medical treatment, inconsistencies between a claimant's testimony and their conduct (including daily activities), and whether the alleged symptoms are consistent with the medical evidence of record. See Tommasetti, 533 F.3d at 1040; Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007). A lack of corroborating, objective medical evidence alone is insufficient grounds for an ALJ to discount a claimant's subjective symptoms; however, it is a factor the ALJ may consider. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R § 404.1529(c)(2)).

**Analysis**

1. The ALJ properly discounted plaintiff's subjective symptom testimony based on his conservative treatment history.[4]

When Dr. Schwartz examined plaintiff in January 2015, plaintiff indicated that he was not taking any medications. (AT 441-42.) Plaintiff later indicated that he took "aspirin as needed for pain" during his September 2015 exam with Dr. Sharma. (AT 473.) Between March and August 2015, plaintiff sought medical treatment five times and was prescribed respiratory inhalers and over-the-counter anti-inflammatory medication for his conditions. (AT 451-68.) Plaintiff has little to no medical history for 2016. Beginning in May 2017, plaintiff sought more intensive treatment for his conditions and was prescribed numerous medications for his pain and breathing

---

[4] Although plaintiff does not address this basis for discounting his subjective symptom testimony, it is reasonable to infer that the ALJ relied on it based on the ALJ's discussion of the medical evidence. (AT 71-73.) "Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned." Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2011) (citations and internal quotation marks omitted).

11

problems as well as physical therapy and chiropractic manipulation.  (See AT 515.)  Between May and September 2017, plaintiff had medical appointments every one to two weeks for follow-ups and treatment.  (See AT 487-515.)  Overall, treatment notes from this period indicate that plaintiff responded well to treatment, namely physical therapy.  (See id.)  By September 2017, plaintiff's medications were significantly reduced and he was counseled to ice and heat his back and increase his exercise by walking 10,000 steps  per day.  (See AT 487-90.)  Additionally, between August and October 2017, plaintiff met with a pain management specialist on two occasions who prescribed therapeutic back injections and counseled plaintiff to continue physical therapy, exercise at home, and the use of a TENS unit.  (AT 737-43.)

The ALJ's assessment of plaintiff's complaints properly relied on evidence of conservative medical treatment, mainly consisting of medication and physical therapy.  An ALJ may rely on such conservative treatment to discount a plaintiff's subjective complaints.  See Tommasetti, 533 F.3d at 1040 (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset"); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007).  Plaintiff's prescribed course of treatment—medications, physical therapy, and a TENS unit—and his lack of other more intensive treatment falls squarely within this Circuit's definition of  "conservative treatment."  See, e.g., Jones v. Comm'r of Soc. Sec., 2014 U.S. Dist. LEXIS 7341, at *19-29 (E.D. Cal. Jan. 21, 2014) (noting conservative treatment consisting of physical therapy, anti-inflammatory and narcotic medications, use of a TENS unit, occasional epidural steroid injections, and massage therapy); Walter v. Astrue, 2011 U.S. Dist. LEXIS 38179, at *9 (C.D. Cal. Apr. 6, 2011) (ALJ permissibly discounted plaintiff's allegations of pain based on conservative treatment of medication, physical therapy, and injection).

In sum, the court finds that plaintiff's relatively conservative treatment and failure to seek a more aggressive treatment plan constitutes a clear and convincing reason to discount plaintiff's subjective symptom testimony.  See Tommasetti, 533 F.3d at 1039-40 (that claimant "did not

seek an aggressive treatment plan" and underwent conservative treatment undermines allegation of disabling impairment).

2. <u>The ALJ properly considered the objective medical evidence of record to discount plaintiff's subjective symptom testimony.</u>

The ALJ primarily discounted plaintiff's subjective symptom testimony based on inconsistencies between plaintiff's claims and the objective medical evidence of record. After outlining in detail plaintiff's medical visits and treatment history from 2015 to 2017, the ALJ concluded that plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms [] are inconsistent because the evidence of record generally does not support the alleged loss of functioning." (AT 73.) In other words, the ALJ found plaintiff's complaints to be "out of proportion to his typically unremarkable presentation during his treatment visits." (AT 71.) Although a lack of medical evidence "cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider . . . ." <u>Carmickle</u>, 533 F.3d at 1161 (finding that inconsistency with objective medical evidence is a "sufficient basis" for rejecting subjective symptom testimony); <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005); <u>Rollins</u>, 261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)). The court finds that substantial evidence of record supports the ALJ's reasoning to discount plaintiff's subjective complaints based on inconsistencies between his allegations and the medical evidence.

Plaintiff claims that chronic back pain severely limits his ability to do practically anything. (<u>See</u> AT 91, 93-94, 320-25.) In evaluating plaintiff's complaints of back pain, the ALJ cited findings from plaintiff's physical examinations, x-ray and MRI imaging, and other medical testing. (<u>See</u> AT 74.) Despite plaintiff's claims of debilitating back pain, the ALJ noted that "[d]iagnostic images of [plaintiff's] lumbar spine were mostly unremarkable with evidence of degenerative changes, but not significant disc space narrowing[,]" and "x-rays of his cervical spine were benign[.]" (AT 74, 459, 484, 520-25.) The ALJ also properly found that "care providers [] noted that he exhibited tenderness in his back, but [] ambulated without assistance or difficulty, transferred from a chair to the exam table, and straight leg raising tests were negative,"

and "[plaintiff] [] demonstrated normal motor strength and function throughout, intact sensation, normal reflexes, [and] full range of motion in his spine on some occasions[.]" (AT 74, 441-45, 471-76, 738, 742.) Other evidence of record, such as the MRI of plaintiff's spine, supports the ALJ's finding that plaintiff had no more than mild impairments. (AT 733-34.)

The ALJ likewise properly evaluated plaintiff's complaints of difficulty breathing in light of the objective medical evidence concerning his emphysema and COPD. Plaintiff claims that he "cannot walk or do much of anything without shortness of breath[.]" (AT 320.) However, a pulmonary function test performed by Dr. Sharma found that plaintiff's results were "consistent with mild airflow obstruction." (AT 478.) Additionally, after undergoing an exercise treadmill test, "a care provider noted he was in the low exercise risk category and that his performance on an exercise treadmill test was . . . symptomatically negative." (AT 72, 748.) Further, "[plaintiff] [] showed normal chest/lung and cardiovascular functioning, with care providers not[ing] his lungs were clear . . . and his heart rate and rhythm was normal." (AT 74, 443, 474.) Similar to the ALJ's evaluation of plaintiff's back, the ALJ properly considered relatively mild objective medical findings with respect to his breathing problems. Accordingly, the court finds that substantial evidence supports the ALJ's discounting of plaintiff's subjective symptom testimony based on the objective medical evidence of record.

3. Even assuming error, the ALJ considering plaintiff's smoking habit and daily activities was harmless.

Plaintiff alleges error due to the ALJ using his history of smoking as a possible rationale to discount his subjective complaints and that the ALJ failed to adequately explain how plaintiff's daily activities were inconsistent with his alleged pain and limitations. (ECF No. 12 at 22-23.)

The ALJ, in a somewhat cursory fashion, noted that "the record indicates that [plaintiff] has been a smoker for 35 years" (AT 74) but then fails to mention plaintiff's smoking again. Regarding plaintiff's daily activities, in determining that the severity and limiting effects of plaintiff's reported symptoms were not as significant as alleged, the ALJ merely stated, "[plaintiff] reported that he does not have problems performing personal care and reported his

14

1  daily activities include[] taking care of his dog, preparing meals, going outside, driving a car, and
2  performing light household chores and shopping in stores on occasion." (AT 74.)
3        Even if the court assumes the ALJ erred regarding these points, *arguendo*, that error
4  would be harmless because the ALJ properly relied on plaintiff's conservative treatment and
5  inconsistencies between plaintiff's testimony and the objective medical evidence of record, as
6  outlined above.  Where at least one of the ALJ's reasons for discounting plaintiff's subjective
7  symptom testimony is valid, the court applies a harmless error standard.  See Molina, 674 F.3d at
8  1115.  An error is deemed harmless so long as "there remains substantial evidence supporting the
9  ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'"  Id.
10 (quoting Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004)).
11       Here, the ALJ did not outright reject plaintiff's subjective symptom testimony.  Instead,
12 the ALJ properly considered plaintiff's allegations in formulating his RFC of a "reduced range of
13 medium work," with several restrictions.  (AT 74.)  Additionally, the ALJ's consideration of
14 plaintiff's conservative treatment is a legally sufficient reason to discount plaintiff's subjective
15 symptom testimony.  Consequently, the ALJ was also entitled to consider inconsistencies
16 between plaintiff's subjective complaints and the other objective medical evidence of record.
17 Thus, the court finds that any error committed by the ALJ in discounting plaintiff's subjective
18 symptom testimony was harmless, and the ALJ's evaluation of plaintiff's subjective symptom
19 testimony is supported by substantial evidence.
20     **C.  The ALJ did not err in rejecting the lay evidence of plaintiff's stepdaughter.**
21       Plaintiff argues that the ALJ improperly rejected the lay witness evidence of plaintiff's
22 stepdaughter "on the basis that it is indeed lay evidence based on observation rather than medical
23 examination/testing[.]"  (ECF No. 12 at 24.)  "Lay testimony as to a claimant's symptoms or how
24 an impairment affects the claimant's ability to work is competent evidence that the ALJ must take
25 into account."  Molina, 674 F.3d at 1114.  An ALJ must give reasons germane to each witness for
26 discrediting lay testimony.  Bayliss, 427 F.3d at 1218.  An ALJ may reject lay witness testimony
27 when the testimony is inconsistent or conflicting with the medical evidence of record.  See
28 Bayliss, 427 F.3d at 1218 (citing Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)); Vincent v.

Comm'r of Soc. Sec., 2018 U.S. Dist. LEXIS 216327, at *49-50 (E.D. Cal. Dec. 26, 2018) ("The ALJ can properly reject testimony that conflicts with the available medical evidence."); Guinn v. Berryhill, 2018 U.S. Dist. LEXIS 90295, at *43-44 (C.D. Cal. May 25, 2018) ("An ALJ may reject lay testimony if it is *inconsistent* with medical evidence, but not if it is simply *unsupported* by medical evidence.").

Despite the sparse analysis, the ALJ properly discounted the lay witness evidence based on inconsistencies between the statements and the objective medical evidence of record. Plaintiff's stepdaughter, Heidi Bodine, filled out a form stating that she had known plaintiff for 27 years and observed plaintiff "a few hours a night." (AT 339.) Bodine reported that plaintiff cannot stand, walk, or run "for any length of time" and that "[plaintiff] has very bad breathing conditions which [disable] him from [doing] much of anything." (Id.) The court finds that Bodine's statements regarding plaintiff's activities of daily living are largely consistent with those reported by plaintiff. (Compare AT 340-44 (Bodine reporting that plaintiff can take the dog out, perform self-care, light house-hold chores, some cooking, shopping, and driving on occasion), with 320-35 (plaintiff's statements attesting to the same).) In rejecting Bodine's statements, the ALJ stated that her statements "do not outweigh the accumulated medical evidence regarding the extent to which [plaintiff's] impairments limit his functional abilities." (AT 75.) Subsequently, the ALJ listed the same objective medical findings used to discount the opinion evidence, citing to numerous medical records: "objective evidence of ambulating without assistance or difficulty, transferring from a chair to the exam table, negative straight leg raising tests, normal motor strength throughout, intact sensation, normal reflexes, and full range of motion in his spine on some occasions demonstrates that the claimant can perform a reduced range of medium work[.]" (See AT 74-75 (citing numerous medical records).)

The court finds that Bodine's statements regarding plaintiff's physical limitations is inconsistent with various medical examinations and testing cited by the ALJ which show no more than mild physical limitations. First, it may be reasonably deduced that the ALJ found plaintiff's largely unremarkable physical presentation at his medical visits to be inconsistent with Bodine's allegations of totally debilitating pain and difficulty breathing. Additionally, an exercise

1    treadmill test, lasting six minutes and one second, was "electrocardiographically negative and
2    symptomatically negative" and revealed that plaintiff has "a limited exercise tolerance[.]" (AT
3    748.) That plaintiff could perform an exercise test for six minutes indicates that plaintiff has
4    more abilities than reported by Bodine. Further, the results of the pulmonary function test
5    performed by Dr. Sharma were "consistent with mild airflow obstruction." (AT 478.) These
6    clinical findings are inconsistent with Bodine's assertion that plaintiff has a debilitating breathing
7    condition and cannot stand, walk, or run "for any length of time." (AT 339.) Accordingly, the
8    ALJ provided a sufficient basis to discredit the lay witness evidence of plaintiff's stepdaughter.
9    See Bayliss, 427 F.3d at 1218; Vincent, 2018 U.S. Dist. LEXIS 216327, at *49-50.

10   **V.    ORDER**
11          Accordingly, IT IS HEREBY ORDERED that:
12          1.      The Commissioner's Motion for Summary Judgment (ECF No. 15) is GRANTED;
13          2.      Plaintiff's Motion for Summary Judgment (ECF No. 11) is DENIED;
14          3.      The decision of the Commissioner is AFFIRMED; and
15          4.      The Clerk is directed to enter judgement in the Commissioner's favor and close the
16                  case.
17   Dated: September 21, 2020

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Azev.1073